1
2
3
4
5
6
7
8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   RONALD A. MIDDLEKAUFF and LISA          No. 2:12-cv-00105-KJM-DAD
     MIDDLEKAUFF,
12
                    Plaintiffs,
13                                           ORDER GRANTING AND DENYING
          v.                                 SUMMARY JUDGMENT
14
     THE HEARST CORPORATION;
15   HEARST TELEVISION INC. and
     HEARST STATIONS., f/k/a HEARST
16   ARGYLE STATIONS, INC.,

17                  Defendants.

18

19          This matter is before the court on the Motion for Summary Judgment or,

20   alternatively, for Partial Summary Judgment by the Hearst Corporation, Hearst Television Inc.,

21   and Hearst Stations Inc. (collectively "defendants").  (Defs.' Mot. Summ. J., ECF 47.)  Ronald A.

22   Middlekauff ("Ronald") and Lisa Middlekauff ("Lisa") (collectively "plaintiffs") oppose the

23   motion.  (Pls.' Opp'n, ECF 50.)  The court decided the motion without a hearing.  As explained

24   below, the court DENIES in part and GRANTS in part defendants' motion.

25   I.      BACKGROUND

26          A.      PROCEDURAL BACKGROUND

27          Defendants removed this case to this court from Sacramento County Superior

28   Court on the basis of diversity jurisdiction on January 12, 2012.  (Defs.' Notice of Removal,

                                              1

1   ECF 1.)  Plaintiffs' Third Amended Complaint alleged four claims: (1) intentional

2   misrepresentation; (2) wrongful discharge based on age discrimination; (3) wrongful discharge

3   based on failure to accommodate; and (4) loss of consortium.  (ECF 20.)  On August 2, 2013,

4   defendants filed a motion to dismiss plaintiffs' Third Amended Complaint (ECF 30), and on

5   November 1, 2012, this court dismissed with prejudice plaintiffs' third claim for wrongful

6   discharge based on failure to accommodate (ECF 39).  On November 14, 2012, defendants filed

7   an answer.  (ECF 41.)

8          Defendants now move for summary judgment on plaintiffs' remaining three

9   claims: (1) intentional misrepresentation; (2) wrongful discharge based on age discrimination; and

10  (3) loss of consortium.  (ECF 47.)  On January 16, 2014, plaintiffs filed an opposition.  (ECF 50.)

11  On January 24, 2014, defendants filed a reply.  (Defs.' Reply, ECF 56.)

12          B.     UNDISPUTED FACTUAL BACKGROUND

13          This case arises out of a television news station's termination of a photographer's

14  employment allegedly based on age.  The television station asserts it fired Ronald because Ronald

15  could no longer perform his regular photographer duties.  In 1979, Ronald began working at

16  KCRA ("the Station") as an intern at the age of eighteen; he later became a photographer, "a

17  position he held for virtually the entirety of his employment."  (Pls.' Response to Defs.'

18  Statement of Undisputed Facts ¶ 3, ECF 51; Defs.' Response to Pls.' Statement of Disputed Facts

19  ¶ 1, ECF 56-1.)  KCRA is a Hearst broadcast television station servicing the Sacramento,

20  Modesto, and Stockton areas of California.  (ECF 51 ¶ 1.)

21          In January 2008, while working on an assignment for the Station, Ronald was

22  involved in a car accident, resulting in serious injuries.  (*Id.* ¶ 4; ECF 56-1 ¶ 12.)  When Ronald

23  returned to work in February 2008, he had a physical restriction.  (ECF 51 ¶ 5.)  Although Ronald

24  was initially restricted from lifting more than five pounds, his lifting restriction gradually

25  decreased.  (*Id.*)  Yet, the restriction was never completely removed, and Ronald was not

26  permitted to lift more than 26 pounds during his employment.  (*Id.*)  Ronald does not dispute that

27  his position as a photographer was physically demanding.  (*Id.* ¶ 17.)  The Station accommodated

28  /////

2

1    him through March 2009 "by assigning him to work in the Station's traffic helicopter and

2    assigning him editing duties"; these duties did not require lifting heavy objects.  (*Id.* ¶ 8.)

3            "On March 26, 2009, a meeting was held with [Ronald], News Director Anzio

4    Williams [("Williams")], Assistant News Director Jim Stimson and Chief Photographer Mike

5    Rhinehart [("Rhinehart")]."  (*Id.* ¶ 10.)  At the meeting, "Mr. Williams explained KCRA

6    employees needed to be able to do more with less," an industry norm undisputed by Ronald.  (*Id.*

7    ¶ 11.)  Accordingly, from the beginning of April 2009, the Station provided Ronald with a small

8    Cannon HD Model HV-20 camera.  (*Id.* ¶ 12.)  The Station had several of these light cameras,

9    "which were used for an initiative called the 'High School Playbook,' a program where the lighter

10   cameras were given to high school students to shoot high school sporting events."  (*Id.* ¶ 13.)

11           On May 27, 2009, Williams and Tracy Clark ("Clark"), then-Controller at the

12   Station, met with Ronald and explained that Ronald's employment was being terminated effective

13   June 5, 2009.  (*Id.* ¶ 22.)  At the time of Ronald's termination, he was a commercial photographer

14   (ECF 56-1 ¶ 2), and the weight per camera of all cameras used by KCRA photographers at that

15   time was 27 pounds (*id.* ¶ 25; ECF 51 ¶ 6).

16   II.     <u>SUMMARY JUDGMENT STANDARD</u>

17           A court will grant summary judgment "if . . . there is no genuine dispute as to any

18   material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).

19   The "threshold inquiry" is whether "there are any genuine factual issues that properly can be

20   resolved only by a finder of fact because they may reasonably be resolved in favor of either

21   party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).[1]

22           The moving party bears the initial burden of showing the district court "that there

23   is an absence of evidence to support the nonmoving party's case."  *Celotex Corp. v. Catrett*,

24   477 U.S. 317, 325 (1986).  The burden then shifts to the nonmoving party, which "must establish

25   that there is a genuine issue of material fact . . . ."  *Matsushita Elec. Indus. Co. v. Zenith Radio*

26           [1] Rule 56 was amended, effective December 1, 2010.  However, it is appropriate to rely on

27   cases decided before the amendment took effect, as "[t]he standard for granting summary
     judgment remains unchanged."  FED. R. CIV. P. 56, Notes of Advisory Comm. on 2010

28   amendments.

1   *Corp.*, 475 U.S. 574, 585 (1986).  In carrying their burdens, both parties must "cit[e] to particular

2   parts of materials in the record . . .; or show [] that the materials cited do not establish the absence

3   or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to

4   support the fact."  FED. R. CIV. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 ("[the

5   nonmoving party] must do more than simply show that there is some metaphysical doubt as to the

6   material facts").  Moreover, "the requirement is that there be no genuine issue of material fact . . .

7   .  Only disputes over facts that might affect the outcome of the suit under the governing law will

8   properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 247–48 (emphasis in

9   original).

10          In deciding a motion for summary judgment, the court draws all inferences and

11   views all evidence in the light most favorable to the nonmoving party.  *Matsushita*, 475 U.S. at

12   587–88; *Whitman v. Mineta*, 541 F.3d 929, 931 (9th Cir. 2008).  "Where the record taken as a

13   whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine

14   issue for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv.

15   Co.*, 391 U.S. 253, 289 (1968)).

16          A court may consider evidence as long as it is "admissible at trial."  *Fraser v.

17   Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  "Admissibility at trial" depends not on the

18   evidence's form, but on its content.  *Block v. City of L.A.*, 253 F.3d 410, 418–19 (9th Cir. 2001)

19   (citing *Celotex Corp.*, 477 U.S. at 324).  The party seeking admission of evidence "bears the

20   burden of proof of admissibility."  *Pfingston v. Ronan Eng'g Co.*, 284 F.3d 999, 1004 (9th Cir.

21   2002).  If the opposing party objects to the proposed evidence, the party seeking admission must

22   direct the district court to "authenticating documents, deposition testimony bearing on attribution,

23   hearsay exceptions and exemptions, or other evidentiary principles under which the evidence in

24   question could be deemed admissible . . . ."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 385–86

25   (9th Cir. 2010).  However, courts are sometimes "much more lenient" with the affidavits and

26   documents of the party opposing summary judgment.  *Scharf v. U.S. Atty. Gen.*, 597 F.2d 1240,

27   1243 (9th Cir. 1979).

28   /////

4

1    "'[S]ummary judgment should be used prudently in [age discrimination] cases

2    involving motivation and intent.'" *Earl v. Nielsen Media Research, Inc.*, 658 F.3d 1108, 1112

3    (9th Cir. 2011) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1282 (9th Cir. 2000)).

4    "'[Courts] require very little evidence to survive summary judgment in a discrimination case,

5    because the ultimate question is one that can only be resolved through a searching inquiry—one

6    that is most appropriately conducted by the factfinder, upon a full record.'" *Earl*, 658 F.3d at

7    1112 (quoting *Lam v. Univ. of Haw.*, 40 F.3d 1551, 1564 (9th Cir. 1994)).

8    III.    <u>DISCUSSION</u>

9        As a preliminary matter, because Ronald "is dismissing the [f]irst [claim] . . . for

10   [i]ntentional [m]isrepresentation" (ECF 50 at 1), the court grants summary judgment against

11   Ronald on that claim without further discussion.  The court addresses plaintiffs' remaining claims

12   next: first, addressing Ronald's wrongful termination claim based on age discrimination brought

13   under *Tameny v. Atlantic Richfield Co.*, 27 Cal. 3d 167 (1980) ("*Tameny*"), and then, Lisa's loss

14   of consortium claim.

15       A.    Wrongful Termination in Violation of Public Policy

16       In support of their motion for summary judgment, defendants make three principal

17   arguments.  First, defendants argue Ronald cannot establish a prima facie case for age

18   discrimination because Ronald cannot show he was replaced by a significantly younger

19   employee.  (ECF 47-1 at 12.)  Second, defendants argue even assuming Ronald can establish a

20   prima facie case, there was a legitimate and nondiscriminatory reason for his discharge, "namely

21   that there were no available positions which [Ronald] could perform."  (*Id.* at 13.)  Specifically,

22   defendants reason that "the Station had no choice but to terminate [Ronald's] employment"

23   because he could no longer work as a regular photographer and "there were no open positions for

24   which he was qualified."  (*Id.*)  Finally, defendants argue Ronald cannot show KCRA's reason for

25   termination was a pretext for discrimination.  (*Id.*)  To support this argument, defendants first

26   argue Ronald "has no direct evidence of pretext or discrimination."  (*Id.*)  Second, defendants

27   argue Ronald "cannot present any specific or circumstantial evidence to establish pretext or

28   /////

1    otherwise demonstrate [d]efendants' reason for discharging him is implausible, inconsistent or

2    baseless." (*Id.* at 14.)

3          In response to defendants' first argument that Ronald cannot show he was replaced

4    by a younger employee, Ronald responds "[h]e was replaced by Dexter De Lima," who is

5    younger than Ronald. (ECF 50 at 8.)

6          As to defendants' second argument that Ronald was discharged because he could

7    no longer work as a regular photographer, Ronald's response is two-fold. First, Ronald argues

8    defendants' reason that Ronald could not perform his job because of his physical disability is

9    itself discriminatory based on Ronald's disability. (*Id.* at 12.) Second, Ronald disputes that he

10   was permanently disabled. (*Id.*) Accordingly, Ronald concludes defendants' reason for his

11   termination is false. (*Id.* at 13.)

12         As to defendants' third argument that Ronald cannot show KCRA's reason for

13   termination was a pretext for discrimination, Ronald responds "there is circumstantial and direct

14   evidence that KCRA was engaging in a discriminatory pattern and practice of eliminating older

15   employees from the workplace . . . ." (*Id.* at 16.)

16         Under California law, "an employer's traditional broad authority to discharge an

17   at-will employee may be limited . . . by considerations of public policy." *Tameny*, 27 Cal. 3d at

18   172 (quoting *Petermann v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of*

19   *Am., Local 396*, 174 Cal. App. 2d 184, 188 (1959)). To establish a claim for wrongful

20   termination in violation of public policy, a plaintiff must prove the following: (1) an employer-

21   employee relationship; (2) termination of the employee's employment; (3) the termination

22   violated public policy; and (4) the termination caused plaintiff harm. *Haney v. Aramark Unif.*

23   *Servs., Inc.*, 121 Cal. App. 4th 623, 641 (2004). A discharge in violation of the California Fair

24   Employment and Housing Act's ("FEHA") prohibition against age discrimination may give rise

25   to a *Tameny* claim. *Stevenson v. Superior Court*, 16 Cal. 4th 880, 897 (1997) (discharge in

26   violation of FEHA may give rise to a common law tort claim for wrongful discharge in violation

27   of public policy based on age discrimination).

28   /////

                                            6

1          Courts apply the burden-shifting framework from *McDonnell Douglas Corp. v.*

2   *Green*, 411 U.S. 792 (1973), to a claim for wrongful termination in violation of public policy.

3   *See Loggins v. Kaiser Permanente Int'l*, 151 Cal. App. 4th 1102, 1108–09 (2007); *see also*

4   *Vargas v. BP Am. Inc.*, No. 12-15340, 2013 WL 6487508, *1 (9th Cir. Dec. 11, 2013)

5   (unpublished) (applying the *McDonnell Douglas* framework to a *Tameny* claim); *Martinez v.*

6   *Nat'l R.R. Passenger Corp.*, 438 F. App'x 595, 596 (9th Cir. June 16, 2011) (citing *Loggins* in

7   affirming the district court's dismissal of a state wrongful termination claim based on gender

8   discrimination).  Under this framework, when direct evidence of discrimination is unavailable, as

9   here, courts use "a system of shifting burdens as an aid to the presentation and resolution of age

10  discrimination cases."  *Hersant v. Dep't of Soc. Servs.*, 57 Cal. App. 4th 997, 1002 (1997).

11         Specifically, the employee must first establish a prima facie case of age

12  discrimination.  *Id.*  While the exact elements of a prima facie age discrimination case applicable

13  in all situations cannot be stated, the fundamental requirement is that the employee must offer

14  sufficient evidence from which a reasonable inference of age discrimination may arise.  *Id.*  This

15  is not an onerous requirement.  *Id.* at 1002–03.

16         Once the employee makes the prima facie showing, the burden shifts to the

17  employer to produce evidence that the termination was based on considerations other than age.

18  *Id.*  "This burden is one of production, not persuasion; it can involve no credibility assessment."

19  *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000) (citations and internal

20  quotation marks omitted).  The employer must present "a legitimate reason for the action . . . to

21  frame the factual issue with sufficient clarity so that the plaintiff will have a full and fair

22  opportunity to demonstrate pretext."  *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248,

23  255-56 (1981).

24          After the employer makes this showing, the burden shifts back again to the

25  employee to show that the reason for termination was age discrimination and the employer's

26  offered reasons are mere pretext.  *Hersant*, 57 Cal. App. 4th at 1003.  The court finds, and the

27  parties agree, that the *McDonnell Douglas* framework applies to Ronald's wrongful termination

28  claim.  The court proceeds to address each aspect of the framework below.

i.     Prima Facie Case

Defendants have not shown there is an absence of genuine dispute as to whether Ronald may establish a prima facie case for wrongful termination based on age discrimination.

To establish a prima facie case, Ronald needs to show (1) he was 40 years of age or older at the time of the adverse action; (2) an adverse employment action was taken against him; (3) he was satisfactorily performing his job at the time of the adverse action; and (4) he was replaced in his position by a significantly younger person. *Hersant*, 57 Cal. App. 4th. at 1003. The parties are in agreement on the elements of Ronald's prima facie case.  (ECF 47-1 at 11; ECF 50 at 7.)

However, "[i]t is not entirely clear that [the fourth] element is a required part of the employee's prima facie case." *Hersant*, 57 Cal. App. 4th at 1003 n.3 (1997) (citing *Heard v. Lockheed Missiles & Space Co.*, 44 Cal. App. 4th 1735, 1756 (1996) ("Although the characteristics of the employee replacing a discharged or demoted employee are certainly relevant in evaluating an employer's motive for an employment decision, we believe those characteristics go to the weight of the evidence rather than its legal sufficiency.")).  "A prima facie case of age discrimination requires evidence the plaintiff is over the age of 40, was performing satisfactorily and was discharged under circumstances giving rise to an inference of unlawful discrimination, i.e., others not over the age of 40 were retained or his job was filled by someone of comparable skill who was not over the age of 40." *Gibbs v. Consol. Servs.*, 111 Cal. App. 4th 794, 799 (2003).  The court need not resolve this issue of state law in deciding defendants' instant motion because even assuming the fourth element is a required element, defendants are not entitled to summary judgment on this issue as explained below.

Defendants do not dispute Ronald was 48 years old at the time of discharge; Ronald was subject to an adverse employment action; and, for purposes of the instant motion, Ronald "was satisfactorily performing his temporary job at the time of his discharge."  (ECF 47-1 at 12.)  However, defendants contend Ronald "was not satisfactorily performing his regular photographer position because he could not perform the job duties – namely, lifting the camera – because of his work restrictions."  (*Id.* n.1.)  Defendants further argue Ronald "was not replaced

8

1    by a significantly younger person" because his position was temporary, created specifically for

2    him, and the Station did not need that position.  (*Id.* at 12.)  Defendants point to their undisputed

3    facts that "no one filled his role of shooting footage with 'High School Playbook' camera," and

4    that Ronald knew that no "other KCRA photographers [were using] the 'High School Playbook'

5    cameras."  (*Id.*)

6           Ronald responds that when using the lighter camera, he was not on a temporary

7    assignment because "he was put into the pool of photojournalists and provided with news

8    assignments to film."  (ECF 50 at 8.)  Ronald further responds that "he was working news stories

9    as he had prior to his accident in a more than satisfactory manner."  (*Id.*)  As to defendants'

10   argument that Ronald was not replaced by a younger person, Ronald responds that "after [he] was

11   fired De Lima was placed in the same pool for assignment as [Ronald] had been working with the

12   [lighter] digital camera."  (*Id.* at 9.)

13          The nature and title of the position Ronald held at KCRA at the time of his

14   termination are important to the court's decision on two essential elements: (1) whether Ronald

15   was satisfactorily performing his position, and (2) whether Ronald was replaced by a significantly

16   younger person.  Here, defendants point to Clark's declaration where Clark seeks to show

17   Ronald's position was temporary by stating the following:

18              Beginning at the end of March 2009, a temporary position was
                created for [Ronald] in which he was allowed to shoot footage
19              using a lighter camera that was being used at the Station for an
                initiative called the "High School Playbook," a program where the
20              lighter cameras were given to high school students to shoot high
                school sporting events.  Allowing [Ronald] to use the lighter, "High
21              School Playbook" camera was a temporary solution to keep him
                employed while waiting for his restrictions to be lifted.  It was not
22              meant to be a permanent position, as the video shot using the lighter
                "High School Playbook" camera was not high enough quality to use
23              for every story, it took longer for editors to use, and the Station
                needed all of its photographers to be able to shoot all types of
24              video.

25   (Clark Decl. ¶ 6, ECF 47-3.)  Ronald provides scattershot evidentiary objections to Clark's

26   statement (ECF 53 at 2-3), which the court overrules.

27          Ronald counters defendants' assertion that his position was temporary by pointing

28   to his declaration, in which he states the following:

9

1

2

3

4

5

> On March 26, 2009, I had a meeting with [Anzio] Williams, [News Director for KCRA], who said, "Light duty work was over, we need you back on the streets." I was given a small Cannon HD Model HV-20 Camera and tripods, microphone and cables to go back on the streets, do lead stories and basically do all the duties of a cameraman without any restrictions. Mr. Williams made it clear that I was going to be shooting lead stories, hard hitting news, stuff that would lead a news cast.

6

7

8

9

(Middlekauff Decl. ¶ 20, ECF 55.) Ronald further declares he "was not told that a new job was being created" when he was assigned the light camera; he was "never told that using the lighter camera was a temporary solution"; and he could "edit and use the film as quickly as if it was shot on the heavier camera." (ECF 55 ¶¶ 26, 28, 30.)

10

11

12

13

14

15

16

Defendants object to Ronald's statements on the grounds they contain hearsay, lack personal knowledge, and are not supported by admissible evidence. (ECF 56-1 at 5.) Specifically, defendants argue, Ronald's statement, "On March 26, 2009, I had a meeting with Mr. Williams who said, 'Light duty work was over, we need you back on the streets,'" contains hearsay. (*Id.*) The court overrules this objection, as the News Director's statements are an admission by a party opponent's agent. *See* FED. R. EVID. 01(d)(2)(D). The court overrules defendants' remaining objections as they are without merit.

17

18

19

20

21

22

23

24

25

26

27

Defendants also argue Ronald's statements are self-serving and thus should be disregarded. (ECF 56 at 3.) As the Ninth Circuit has previously noted, "declarations oftentimes will be self-serving—[a]nd properly so, because there would be no point in [a party] submitting [them]." *S.E.C. v. Phan*, 500 F.3d 895, 909 (9th Cir. 2007) (citations and internal quotation marks omitted). Consequently, "[t]hat an affidavit is self-serving bears on its credibility, not on its cognizability for purposes of establishing a genuine issue of material fact." *Id.* (citations and internal quotation marks omitted). Only in rare instances, "when a declaration 'state[s] only conclusions, and not such facts as would be admissible in evidence,'" should a court disregard a self-serving declaration for purposes of summary judgment. *Id.* (citation omitted). Here, Ronald's statements do not state only conclusions, but instead contain specific facts and reflect conversations he had with other employees at KCRA.

28

/////

10

1    Moreover, defendants' reliance on *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d

2    1054, 1061 (9th Cir. 2002), is misplaced.  (ECF 56 at 3.)  There, the declaration in question

3    contained facts "beyond the declarant's personal knowledge," and declarant did not explain how

4    he knew the facts to be true.  *See Phan*, 500 F.3d at 909 (citing *Villiarimo*, 281 F.3d at 1059 n.5).

5    Here, Ronald's statement does not suffer from a similar defect because the statement is based on

6    Ronald's personal conversation with Mr. Williams; Ronald states the exact date of the

7    conversation; and Ronald specifically quotes what Williams has told him.  (ECF 55 ¶ 20.)  The

8    court considers this portion of Ronald's declaration in deciding defendants' motion.

9    Construing all reasonable inferences in Ronald's favor, *Matsushita*, 475 U.S. at

10   587–88, the court finds that Ronald's statements about the nature of his position rebut defendants'

11   statements to the contrary, and therefore create a genuine dispute of material fact as to whether

12   Ronald's position was temporary or permanent.  For purposes of summary judgment, viewing this

13   evidence in the light most favorable to the non-moving party, the court assumes Ronald's position

14   was permanent.

15   Because there is a genuine dispute as to whether Ronald was replaced by a

16   younger employee and whether he was satisfactorily performing his job, the court rejects

17   defendants' argument that Ronald cannot establish a prima facie case.  *Cordova v. State Farm*

18   *Ins. Co.*, 124 F.3d 1145, 1148 (9th Cir.1997) ("The requisite degree of proof necessary to

19   establish a prima facie case . . . on summary judgment is minimal and does not even need to rise

20   to the level of a preponderance of the evidence." (internal quotation marks and citation omitted)).

21                              ii.     Legitimate Reason

22   The burden of production thus shifts to defendants "to articulate a legitimate,

23   nondiscriminatory reason for its adverse employment decision."  *Noyes v. Kelly Servs.*, 488 F.3d

24   1163, 1169 (9th Cir. 2007).  "To meet this burden, 'the defendant must clearly set forth, through

25   the introduction of admissible evidence,' reasons for its employment decision which, if believed

26   by the trier of fact, would support a finding that the employment action was not a result of

27   unlawful discrimination."  (*Id.*) (citing *Burdine*, 450 U.S. 248, 255.)

28   /////

11

1    Defendants assert they "had a legitimate, nondiscriminatory reason for [Ronald's]

2    discharge, namely that there were no available positions which he could perform." (ECF 47-1 at

3    13.) Specifically, defendants argue they had accommodated Ronald for almost a year-and-a-half

4    hoping that Ronald's condition would improve, but when it was confirmed that Ronald's

5    "condition would not improve to the point that he could work as a regular photographer," and

6    because there were no other open positions for which Ronald was qualified, there was no choice

7    but to terminate Ronald's employment. (*Id.*)

8        The court finds defendants have met their burden of production because they have

9    offered a legitimate reason for Ronald's termination unrelated to Ronald's age. Defendants

10   introduce a letter from their workers' compensation carrier notifying KCRA that Ronald's work

11   restrictions were permanent. (ECF 56-3, Ex. A.) The letter provides in relevant part: "the

12   purpose of this letter is to inform you Ronald Middlekauff has permanent work restrictions . . . ."

13   (*Id.* at 1.) Additionally, defendants have produced a letter from Clark addressed to Ronald where

14   the following reason for Ronald's termination is provided:

15
     > The essential functions of your job as a photographer require that
16   > you lift more than 26 pounds on a daily basis. We provided you a
     > smaller camera . . . while we awaited the determination of the status
17   > of your physical restrictions. However, the use of that small camera
     > is by no means a permanent solution for your job as a photographer.
18   > We cannot modify or alter the job of photographer for KCRA to
     > accommodate your permanent work restrictions. Further, we do not
19   > have any other openings at this time that would accommodate your
     > restriction or for which your work experience qualifies you.

20   (ECF 47-6, Ex. B.) The court finds defendants have met their burden of production. *See Noyes*,

21   488 F.3d at 1169 (finding the employer's statements sufficient evidence of the employer's

22   nondiscriminatory reason for promoting another individual over the plaintiff); *Jackson v. Bd. of*

23   *Equalization*, No. S-09-1387, 2013 WL 394716, at *7 (E.D. Cal. Jan. 30, 2013) (finding the

24   employer's declaration sufficient evidence of the employer's nondiscriminatory reason for hiring

25   another individual over the plaintiff).

26        iii.    Proof of Pretext

27        Because defendants have articulated a legitimate nondiscriminatory reason for the

28   termination, Ronald must "raise a triable issue that [defendants'] proffered reason is pretext for

12

1   unlawful discrimination." *Earl,* 658 F.3d at 1112.  "The ultimate burden of persuasion remains

2   with [Ronald], " *id.*, yet, "the shift back to [Ronald] does not place a new burden of production on

3   [him] . . . [,]" *Noyes*, 488 F.3d at 1169 (internal quotation marks and citation omitted).

4   Ronald may prove pretext in either of two ways: "(1) directly, by showing that

5   unlawful discrimination more likely than not motivated the employer; or (2) indirectly, by

6   showing that the employer's proffered explanation is unworthy of credence because it is

7   internally inconsistent or otherwise not believable." *Earl,* 658 F.3d at 1112–13.  "All of the

8   evidence [as to pretext]—whether direct or indirect—is to be considered cumulatively." *Noyes*,

9   488 F.3d at 1170 (internal quotation marks and citation omitted).  While Ronald's evidence must

10   be "specific" and "substantial" to create a triable dispute as to pretext, Ronald's burden is "hardly

11   an onerous one." *Earl*, 658 F.3d at 1113 (internal quotation marks and citations omitted).

12   Ronald "has not presented direct evidence of discrimination, such as comments

13   from supervisors betraying bias or animus against older workers." *Id.* at 1112.  Rather, Ronald

14   "relies on circumstantial evidence to attack [defendants'] proffered reason." *Id.*  Specifically,

15   Ronald argues that defendants' explanation for his termination lacks credibility for the following

16   reasons: (1) Ronald was never told that by using a lighter camera he was placed in a temporary

17   position, and Ronald could perform his job duties with the lighter camera even better than before

18   (ECF 50 at 13–14); (2) defendants placed another employee, "De Lima[,] in the same pool for

19   assignment as [Ronald] had been working with the smaller digital camera" (*id.* at 16); (3) "[t]he

20   union contract shows that KCRA would be paying [De Lima] far less than they were paying

21   Ronald" (*id.*); and (4) defendants changed its camera equipment to lighter equipment after

22   Ronald's termination (*id.* at 15).

23   Viewing the evidence in the light most favorable to Ronald, the court concludes

24   Ronald has raised a triable issue as to pretext.  Based on Ronald's first reason, there is a genuine

25   triable issue as to whether Ronald was placed in a temporary position.  Moreover, in his

26   declaration, Ronald states that although he could not lift more than 26 pounds at the time of his

27   employment, he could use the lighter camera for "every story without any problem."  (ECF 55

28   ¶ 29.)  Specifically, Ronald provides that he could edit and use the films shot by the lighter

13

1    camera "as quickly as if it was shot on the heavier camera" (*id.* ¶ 30), and "based on

2    approximately [30] years [of] experience," the pictures Ronald "was producing on the lighter

3    Canon camera were superior to [those] being shot on the heavier cameras" (*id.* ¶ 31).  Ronald

4    further states: "Using the Canon camera, I could shoot all types of video.  There was nothing that

5    I could not use for any story that I was assigned."  (*Id.* ¶ 32.)  Ronald concludes that defendants'

6    reason for his termination was pretextual because at the time of his employment he "was

7    performing all [his] duties as a photographer without any difficulty or restrictions."  (*Id.* ¶ 33.)

8            Ronald also has presented what he says is a memorandum issued by Rhinehart, the

9    Chief Photographer, on June 12, 2009, shortly after Ronald's termination, stating another

10   employee, De Lima, then 33 years old, was added to the night side crew.  (ECF 55, Ex. 7; ECF

11   56-3 ¶ 5.)

12           In sum, there are genuine disputes whether Ronald's position was temporary;

13   whether Ronald was able to perform his photographer job duties with the lighter camera; and

14   whether De Lima was added to the same pool of photographers as Ronald after Ronald's

15   termination.  Thus, a rational trier of fact could find defendants' proffered reason for Ronald's

16   termination, namely Ronald's inability to perform his regular photographer job duties, was

17   pretextual.  *See Hersant*, 57 Cal. App. 4th at 1004 (questions as to the defendant's proffered

18   reasons, coupled with a prima facie showing, "permit the trier of fact to infer the ultimate fact of

19   intentional discrimination," thus requiring no further proof of discrimination (original emphasis));

20   *see also Chuang v. Univ. of Cal. Davis, Bd. of Trs*., 225 F.3d 1115, 1124 (9th Cir. 2000) ("As a

21   general matter, the plaintiff in an employment discrimination action need produce very little

22   evidence in order to overcome an employer's motion for summary judgment.").  The court

23   DENIES defendants' motion for summary judgment as to Ronald's wrongful termination claim.

24           B.  Loss of Consortium

25           Defendants also move for summary judgment on Lisa's loss of consortium claim.

26           A loss of consortium claim has four elements: "(1) a valid and lawful marriage

27   between the plaintiff and the person injured at the time of the injury; (2) a tortious injury to the

28   plaintiff's spouse; (3) loss of consortium suffered by the plaintiff; and (4) the loss was

                                                    14

1   proximately caused by the defendant's act." *Hahn v. Mirda*, 147 Cal. App. 4th 740, 746 n.2

2   (2007) (citation omitted).  The California Supreme Court first recognized a common law cause of

3   action for loss of consortium in *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal. 3d 382, 408 (1974).

4   Applying general tort principles, the court held that "each spouse has a cause of action for loss of

5   consortium . . . caused by a negligent or intentional injury to the other spouse by a third party."

6   *Id.*  "The concept of consortium includes not only loss of support or services, it also embraces

7   such elements as love, companionship, affection, society, sexual relations, solace and more."  *Id.*

8   at 405 (internal quotation marks and citation omitted).  "*Rodriguez* contemplates injury to the

9   nonplaintiff spouse that is sufficiently serious and disabling to raise the inference that the

10   conjugal relationship is more than superficially or temporarily impaired."  *Molien v. Kaiser*

11   *Found. Hospitals*, 27 Cal. 3d 916, 932–33 (1980) (en banc).  "However, it is irrefutable that

12   certain psychological injuries can be no less severe and debilitating than physical injuries."  *Id.* at

13   933.

14          In *Molien*, the California Supreme Court clarified that the sufficiency of the harm

15   and the causation required to state a claim are fact questions "for the jury":

16          Whether the degree of harm suffered by the plaintiff's spouse is
        sufficiently severe to give rise to a cause of action for loss of
17          consortium is a matter of proof. When the injury is emotional rather
        than physical, the plaintiff may have a more difficult task in
18          proving negligence, causation, and the requisite degree of harm; but
        these are questions for the jury, as in all litigation for loss of
19          consortium. In *Rodriguez* we acknowledged that the loss is
        'principally a form of mental suffering,' . . . but nevertheless
20          declared our faith in the ability of the jury to exercise sound
        judgment in fixing compensation. We reaffirm that faith today.
21

22   27 Cal. 3d at 933 (citation and internal quotation marks omitted).  Here, the second and fourth

23   elements are at issue.  Defendants argue Ronald's injuries, if any, are not sufficiently serious to

24   allow Lisa to state a loss of consortium claim.  (ECF 47-1 at 17.)  Defendants also argue Lisa

25   cannot prove that any damage she suffered is attributable to Ronald's termination because the

26   marriage had problems even before Ronald's termination.  (ECF 47-1 at 19.)

27   /////

28   /////

15

1    Lisa responds she has produced sufficient evidence to allow the question of

2    causation and the sufficiency of her injuries to be decided by a jury.  (ECF 50 at 17.)

3    Additionally, Lisa argues the existence of any prior problems "does not change the fact that the

4    problems increased after the termination and the existence of prior problems does not impair

5    further injury which was created by the termination."  (*Id.* at 18.)

6    Having reviewed the record and all admissible evidence (*see* ECF 47-9 at 2–5), the

7    court finds there is sufficient evidence to create a genuine dispute as to causation and the degree

8    of harm.  Specifically, Lisa points to her responses to defendants' interrogatories.  In them she

9    states that Ronald "has difficulty falling asleep and when he finally does fall asleep, he has

10   nightmares where he is crying, twitching, and jerking"; Lisa has "resorted to sleeping in another

11   room because Ron[ald] keeps [her] up all night"; after Ronald's termination, Ronald "became

12   majorly depressed and started drinking a lot" (ECF 47-9 at 2); and Lisa feels that she doesn't have

13   "the husband, friend, support . . . that [she] once had in him before the layoff" (*id.* at 3).  Lisa

14   further states: "Because Ron[ald] is so depressed and suffers from [Post Traumatic Stress

15   Disorder]," Ronald is no longer able to clean the house and "maintain the yard like he used to

16   [do]."  (*Id.* at 4.)  Viewing this evidence in the light most favorable to plaintiffs as the non-

17   movants, the court finds there is a genuine dispute whether the marital relationship has been

18   sufficiently harmed to be decided by the fact finder.  *See Molien*, 27 Cal. 3d at 933 (noting

19   whether the degree of harm suffered by the plaintiff's spouse is sufficiently severe to give rise to

20   a cause of action for loss of consortium is a matter for the jury to decide).  The court DENIES

21   defendants' motion as to Lisa's loss of consortium claim.

22   IV.   <u>CONCLUSION</u>

23   For the foregoing reasons, the court orders as follows:

24   1.   Defendants' Motion for Summary Judgment is DENIED as to plaintiff Ronald

25        Middlekauff's claim for wrongful termination in violation of public policy and

26        as to Lisa Middlekauff's claim for loss of consortium.

27   /////

28   /////

2. Defendants' Motion for Summary Judgment is GRANTED as to plaintiff

Ronald Middlekauff's claim for intentional misrepresentation.

IT IS SO ORDERED.

DATED:  April 8, 2014.

_____

UNITED STATES DISTRICT JUDGE

17